**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

PEARL BEALE *et al.*,      :
            :
     Plaintiffs,   :   Civil Action No.:  04-959 (RMU)
            :
     v.      :   Document No.:  95
            :
DISTRICT OF COLUMBIA *et al.*,  :
            :
     Defendants.  :

**MEMORANDUM OPINION**

**DENYING THE PLAINTIFFS' APPEAL OF MAGISTRATE JUDGE'S ORDERS REGARDING
REOPENING OF DISCOVERY AND BRIEFING SCHEDULE FOR DISPOSITIVE MOTIONS**

**I. INTRODUCTION**

This case involves a lawsuit brought by the plaintiffs following the stabbing of Givon

Pendleton and Bradley Autman at the D.C. Jail in December, 2002.  Before the court is the

plaintiffs' appeal of Magistrate Judge Kay's Memorandum Order reopening discovery and his

Minute Order denying as moot the plaintiffs' motion for a dispositive motions schedule, both

issued December 12, 2007.  The plaintiffs argue that Judge Kay failed to make a finding of "good

cause" when he granted the defendant's motion to reopen and extend discovery; that a

substitution of counsel does not constitute good cause for reopening discovery; that, even if it

did, the defendants did not truly lose their lead counsel before the discovery deadline expired and

have shown no pre-deadline due diligence; that the law of the case precludes an extension of

discovery for the defendants; and that reopening discovery will unduly prejudice the plaintiffs.

The defendants maintain that Judge Kay did apply the correct standard, that he clearly articulated

the basis of his finding of excusable neglect, that loss of counsel is good cause for an extension,

and that the plaintiffs will incur no prejudice from an extension.  Because the court concludes

that Judge Kay correctly applied the appropriate legal standards, and because his factual findings

are not clearly erroneous, the court denies the plaintiffs' appeal.

## II.  BACKGROUND

### A.  Factual History

On December 11, 2002, Dominic Jones, an inmate at the D.C. Jail, fatally stabbed Givon

Pendleton, a pretrial detainee at the D.C. Jail.  Am. Compl. ¶ 2.  On December 13, 2002, an

unknown inmate at the D.C. Jail stabbed inmate Bradley Raymond Autman in the neck.[1]  *Id*. at 3.

The following day, a third stabbing, this time of inmate Mikal Gaither, took place in a housing

unit of the D.C. Jail.  *Id.* at 4.  Gaither died as a result of the stabbing wounds the following day.

*Id.*

Decedent Givon Pendleton's mother, Pearl Beale, and stabbing victim Bradley Raymond

Autman bring this suit against the District of Columbia; Odie Washington, the director of the

D.C. Department of Corrections; Marvin Brown, the retired Warden of the D.C. Jail; Dennis

Harrison, the Deputy Warden; and Steven Smith, the current Warden.  *See* Am. Compl.

According to the plaintiffs, these stabbings occurred soon after a population explosion at the jail

following the expiration of a judicially created population cap and were the result of

"unconstitutional conditions at the Jail as well as negligence of District officials in operating that

facility."  *Id.* ¶ 5.

---

[1]      Autman survived the stabbing, though he was hospitalized for several days.  Am. Compl. ¶ 3.

**B. Procedural History**

The plaintiffs filed suit in this court on June 10, 2004. On December 19, 2005, the court referred the case to Magistrate Judge Kay for all discovery and discovery-related disputes. Order (Dec. 19, 2005). Within a little more than four months, the plaintiffs had filed three separate motions for sanctions alleging numerous discovery violations, stonewalling and violations of court orders. On March 30, 2006, the court referred these motions to Judge Kay. Order (Mar. 31, 2006). On January 31, 2007, Judge Kay issued a Minute Order deferring a ruling on the plaintiffs' sanctions motions until the close of all discovery. Min. Order (Jan. 31, 2007). Contemporaneously, this court denied the defendants' motion for summary judgment without prejudice and declared that it would entertain dispositive motions after the close of discovery. Min. Order (Jan. 31, 2007).

On April 10, 2007, Judge Kay ordered that all discovery would close on October 9, 2007. Order (Apr. 10, 2007). On September 25, 2007, Judge Kay granted a request by the defendants for an extension of discovery to November 9, 2007. Min. Order (Sept. 25, 2007). On October 25, 2007, Judge Kay granted a further extension, unopposed by the plaintiffs, setting November 5, 2007 as the deadline for defendants to serve their expert reports and November 19, 2007 as the deadline for the close of discovery. Min. Order (Oct. 25, 2007). On November 23, 2007, the defendants moved for an extension of time to complete discovery. Defs.' Mot. to Reopen Discovery and Schedule Dispositive Mot. Deadline ("Defs.' Mot."). Specifically, they sought (1) to late file their expert reports; (2) to take depositions of plaintiffs' experts "and any other necessary fact witnesses, including plaintiff Bradley Autmon, and Melvin Reese"; and (3) to file a dispositive motion after discovery. *Id.* at 1. Defendants explained that "[o]n or about

November 9, 2007, former counsel of record began Administrative Leave." *Id.* at 2.  C. Vaughn

Adams, current counsel, was assigned to the case on November 19, 2007, entering his appearance

on November 21, 2007.  *Id.* at 1-2.  Additionally, Shameka Gainey entered her appearance on

November 23, as did Zuberi Williams on November 27.  *Id.* at 2.  Defendants represent that

because of "personnel changes and the shortage of staff attorneys because of attrition,

reassignment of this case could not be more timely made." *Id.* at 4.  Under Federal Rules of

Civil Procedure 6(b), they asked the court to enlarge the discovery close date and accept their late

filed motion on the basis of excusable neglect.  *Id.*  Counsel Vaughn cited other circumstances

for his untimeliness, including the fact that he entered appearance in another case for a trial

scheduled to begin a day later, and that he did not learn of this assignment until November 20,

whereupon her entered his appearance the next day.  *Id.*

On December 7, 2007, the plaintiffs filed an opposition.  They noted that the court had

already set five deadlines for serving expert reports and five deadlines for closing discovery.

Pls.' Opp'n to Def.'s Mot. at 2.  Moreover, in the fourth extension granted on September 25,

2007, the court ruled that there would be "no further extensions." *Id.*  The plaintiffs also

complain that the defendants did not cite Rule 16(b)(4) for the standard governing modifications

of scheduling orders.  *Id.* at 4.  Under that rule, the court must make a finding of "good cause,"

which includes evidence of due diligence by the movant.  *Id.*  As the defendants' former counsel

did not leave until November 9, the defendants, the plaintiffs maintain, did not explain why they

failed to move for an extension of the expert report deadline before the November 5 deadline.  *Id.*

at 5.  Moreover, the defendants did not assign a new attorney to the case until November 20, one

day after the close of discovery.  *Id.* at 7.  Finally, the plaintiffs opposed any postponement of the

dispositive motion briefing schedule, as "compound[ing] the prejudice suffered by Plaintiffs and continu[ing] to reward Defendants for their ongoing failure to follow the law, the orders of this Court, and the applicable procedural rules." *Id.* at 8.

On December 12, 2007, Judge Kay issued a Memorandum Order granting in part and denying in part the defendants' motion.  Judge Kay recognized that, "[p]ursuant to Fed. R. Civ. P. 6(b), the Court may, for good cause, extend the time in which an act may be done on the basis of a motion made after the time for doing such act has expired, if the party failed to act because of excusable neglect."  Mem. Order (Dec. 12, 2007) at 1.  Judge Kay noted the personnel changes in the defendants' legal office; stated that "[d]uring the time this Court has been charged with handling discovery disputes in this matter only this counsel has appeared on behalf of Defendants," *id.* at 2 n.3; and cited in particular the defendants' representation that "new counsels need additional time to familiarize themselves with the trial record, including . . . plaintiffs' Amended Complaint, the arguments made in various motions . . . [and] the 15,000 plus documents produced in discovery," *id.* at 2.  Judge Kay held:

> While the Court is sympathetic to Plaintiffs' position in this matter, particularly in light of the history of delays in this case, the Court must consider the circumstances and timing of prior counsel's withdrawal of his appearance and the efforts being made by the Office to staff this case with three attorneys who are diligently working to familiarize themselves with this litigation.

*Id.* at 2-3.  Judge Kay also highlighted the timing of the request, "which occurred shortly after the November 19, 2007 close of discovery and prior to any expert depositions being taken, dispositive motions being filed or the setting of a trial date."  *Id.* at 3.  Accordingly, he found no undue prejudice to the plaintiffs.  *Id.*  Judge Kay ordered that discovery be reopened to close on February 20, 2008, and extended the deadline for defendants' expert reports to December 30,

2007, and the deadline for dispositive motions to March 5, 2008. *Id.* Judge Kay concluded with a declaration that "[t]here shall be no more extensions of discovery absent exigent circumstances." *Id.* at 3.

The plaintiffs appealed Judge Kay's decision on December 21, 2007, and briefing before this court ensued. The parties' arguments now presented, the court begins its analysis.

## III.  ANALYSIS

### A.  Legal Standard Review of Magistrate Judge Decisions

A party may invoke Federal Rule 72(a) and Local Rule 72.2 to seek reconsideration of a magistrate judge's determination in a discovery dispute. FED. R. CIV. P. 72(a); LCvR 72.2. Upon review, "the magistrate judge's decision is entitled to great deference" and will not be disturbed "unless found to be 'clearly erroneous or contrary to law.'" *Boca Investerings P'ship v. United States*, 31 F. Supp. 2d 9, 11 (D.D.C. 1998)). "In view of this standard, the court will affirm the magistrate judge's determination unless 'on the entire evidence' the court 'is left with the definite and firm conviction that a mistake has been committed.'" *Neuder v. Battelle Pac. Northwest Nat'l Lab.*, 194 F.R.D. 289 (D.D.C. 2000) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 365 (1948)); *Arakelian v. Nat'l W. Life Ins. Co.*, 126 F.R.D. 1, 2 (D.D.C. 1989).

### B.  Magistrate Judge Kay's Conclusion that Good Cause and Excusable Neglect Warranted  Reopening and Extending Discovery is not Contrary to Law

#### 1.  The Decision Applies the Correct Law and Sufficiently Articulates Its Reasoning

The plaintiffs rehash before this court essentially the same arguments they presented to Magistrate Judge Kay. To begin, they accuse Judge Kay of failing to apply the correct legal standard. Plaintiffs argue that he "failed to acknowledge – let alone apply – [Rule 16(b)(4)'s

'good cause'] standard."  Pls.' Objections to Orders Reopening Discovery ("Pls.' App. Mot.") at

6.  The plaintiffs further allege that the order "contain[s] no finding – under any potentially

applicable standard," resting their argument on the formalistic observation that the order uses the

words "considers" and "takes note" rather than "finds."  *Id.* at 6-7.  The defendants describe the

plaintiffs' characterization here as "disingenuous," because Judge Kay clearly acknowledged that

the standards of good cause and excusable neglect governed his decision.  Defs.' Opp'n to Pls.'

App. Mot. ("Defs.' App. Opp'n") at 7.  Furthermore, they argue, Rule 6(b) explicitly provides the

discretionary authority for a judge to extend a deadline on the basis of an untimely motion and

uses the same standard as Rule 16(b)(4).  *Id.*  Thus, whether Judge Kay specifically cited Rule

16(b)(4) as well is of no event.  *Id.*

Whether the plaintiffs' argument is disingenuous the court cannot say, but it is

undoubtedly frivolous.  Rule 6 affords a district court, or appointed magistrate judge, the

authority to enlarge time periods set either in the federal rules or by the court's own orders.  FED.

R. CIV. P. 6(b) (providing for enlargement "[w]hen by these rules . . . or by order of court an act

is required or allowed to be done at or within a specified time"); *Kreutzer v. Bowersox*, 231 F.3d

460, 464 n.2 (8th Cir. 2000).  Rule 16(b)(4) does contemplate the issuance of a scheduling order

early in the litigation process and does provide a means of modification for the dates thereof, but

nowhere does its language suggest that it prohibits the filing or consideration of a motion to late

file and expand discovery deadlines under Rule 6.  *See, e.g.*, *Blumenthal v. Drudge*, 186 F.R.D.

236, 240 (D.D.C. 1999) (identifying Rule 6(b) as applicable method for considering timely

requests and untimely motions to extend discovery); *cf.* FED. R. CIV. P. 6(b)(2) (listing exceptions

for extensions of time under Rule 6; namely, "Rules 50(b) and (d), 52(b), 59(b), (d) and (e), and

60(b)" but not Rule 12(b)).  The same standard, good cause, applies to both rules, and the court

finds no law dictating a preference either way in the case of an untimely motion, as here.[2]  *See*

LCvR 16.4 (allowing the court to "modify the scheduling order at any time upon a showing of

good cause"); Advisory Comm. Note on FED. R. CIV. P. 6(b) (explaining that "Rule 6(b) is a rule

of general application giving wide discretion to the court to enlarge these [the Federal Rules']

time limits or revive them after they have expired").

As for the plaintiffs' cavil at the order's phraseology, frankly the court has difficulty

taking it seriously.  Judge Kay's Memorandum Order clearly sets out the parties' arguments and

– by articulating a conclusion that affirms the credibility of the defendants' representations – sets

forth the basis for a finding of excusable neglect and absence of undue prejudice.  Mem. Order

(Dec. 12, 2007) at 1-2; *see* FED. R. CIV. P. 72(a), (b)(1) (tasking, for nondispositive matters,

magistrate judges to "issue a written order stating the decision" rather than, as for dispositive

motions, issue "proposed findings of fact").  That he does not precede his conclusions with the

magic words "I find" is immaterial.  *See* FED. R. CIV. P. 52(a)(3) (providing that a "court is not

required to state findings or conclusions when ruling on a motion under Rule 12 or 56 or . . . on

any other motion").

---

[2]     The argument is particularly frivolous because the plaintiffs are or should be aware that (1)
the standard is identical for both rules and (2) this court reviews a magistrate's legal conclusions
*de novo*; thus, even if Judge Kay had chosen the wrong standard, his decision would constitute,
at worst, harmless error.  *See United States v. Microsoft Corp.*, 253 F.3d 34, 100 (D.C. Cir. 2001)
(explaining that "an appellate court will not interfere with the trial court's exercise of its
discretion to control its docket and dispatch its business . . .  except upon the clearest showing
that the procedures have resulted in actual and substantial prejudice to the complaining litigant");
*Tagayun v. Lever & Stolzenberg*, 239 Fed. Appx. 708, 709 (3d Cir. 2007) (reversing on other
grounds but leaving undisturbed district court's conclusion that a magistrate judge's handling of
the dispositive aspects of a case "'at most' constituted a harmless error because the district court
was going to review the parties' claims *de novo*").

### 2.  Loss of Counsel May Constitute Good Cause for Reopening Discovery

The plaintiffs next argue the magistrate judge erred in concluding that the voluntary decision of a party to replace one attorney with another constitutes good cause for an extension of discovery.  Pls.' App. Mot. at 7.  The cases the plaintiffs cite for this proposition do express dissatisfaction by different courts with various parties' lackadaisical approach to scheduling deadlines, but they are not firm affirmations of the proposition that a court cannot grant an extension when a party's lead attorney suddenly takes administrative leave, that party promptly files a motion for extension, and no undue prejudice attaches to the opposing party.  *See Smith Wilson Co. v. Trading and Dev. Establishment*, 1991 WL 171689, at *1 (D.D.C. Aug. 20, 1991) (castigating party requesting extension for not "promptly obtaining replacement counsel, . . . [but instead] wait[ing] until the eleventh hour" and "accomplish[ing] nothing" in the way of discovery during the past 3 months); *Hussain v. Nicholson*, 435 F.3d 359, 363 (D.C. Cir. 2006) (holding that district court did not abuse its discretion by declining to extend discovery because "request came over three months after discovery closed and several weeks after [opposing party] filed its motion for summary judgment").

As this jurisdiction has repeatedly declared, a district court has wide discretion in managing its discovery process; thus, the above-cited cases merely reflect affirmations and instantiations of that discretion.  *See Hussain*, 435 F.3d at 363 (recognizing that district courts have broad discretion in structuring discovery and in resolving discovery problems).  Moreover, here Judge Kay highlighted the timing of the defendant's request, noting that it "occurred shortly after the November 19, 2007 close of discovery and prior to any expert depositions being taken, dispositive motions being filed or the setting of a trial date."  Mem. Order (Dec. 12, 2007) at 3.

That a dilatory motion to extend discovery based on a purported need for new counsel might raise the ire of a judge who might in his discretion deny said motion does not necessitate the conclusion that every judge must react thusly in every case before him.  The histories, vagaries and progress of each case are unique, and the judge managing discovery is in the best position to weigh the equities.  The court, therefore, does not conclude that Magistrate Judge Kay's decision that the replacement of the defendants' lead counsel justified an extension is contrary to law.

### 3.  Magistrate Judge Kay's Order did not Violate the Law of the Case Doctrine

The plaintiffs contend that Judge Kay bound himself to the deadlines for the defendant's expert reports and the close of discovery set forth in his September 25, 2007 order because he wrote: "There will be no further extensions of discovery."  Pls.' App. Mot. at 8.  The plaintiffs then claim that Judge Kay's decision ignored this court's standing order, as the defendants moved for an extension of time (1) not at least four days prior to the deadline and (2) without indicating the number of previous extensions of time granted.  *Id.* at 9.  Additionally, the plaintiffs challenge the decision's failure to address this court's September 30, 2005 admonition that it would "not tolerate any dilatory tactics or attempts at stonewalling."  *Id.* (citing Mem. Order (Sept. 30, 2005) at 3 n.3).  Finally, the plaintiffs contend that because the district court referred the case to Judge Kay only "for discovery disputes," his order denying as moot the plaintiffs' motion for scheduling of dispositive motions violates the law of the case.  *Id.* (citing Min. Order (Dec. 12, 2007)).

The plaintiffs forget a fundamental rule of litigation: the court's discretionary pronouncements are for it – not the parties – to enforce.  *See Arizona v. California*, 460 U.S. 605, 618  (1983) (affirming that the law-of-the-case doctrine "directs a court's discretion," but "does

not limit the tribunal's power"); *U.S. on Behalf of Dept. of Labor v. Ins. Co. of North Am.*, 131

F.3d 1037, 1043 n.12 (D.C. Cir. 1997) (noting that doctrine "is a prudential rule rather than a

jurisdictional one, motivated by a practical concern for judicial economy," making remand for

reconsideration appropriate where new facts were available).  A judge does not bind his own

broad discretion by preemptively warning parties that he runs a tight ship.  And if, in furtherance

of case management, a judge occasionally betrays the fact that his bark is scarier than his bite,

that is not a grievance on which a losing party is entitled to rest a reversal.

Moreover, the law-of-the-case doctrine has little to do with docket management.  It

"refers to a family of rules embodying the general concept that a court involved in later phases of

a lawsuit should not re-open questions decided (i.e., established as the law of the case) by that

court or a higher one in earlier phases." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739

(D.C. Cir. 1995).  Its purpose is to ensure a consistency of legal analysis and findings on

dispositive questions throughout the litigation process. *See Northwestern Ind. Tel. Co. v. FCC*,

872 F.2d 465, 471 (D.C. Cir. 1989) (holding that appellate court's prior ruling establishing

exhaustion requirement was law of the case and could not be challenged on second appeal).  In

discovery disputes, the exact same legal issue is rarely presented twice.  Indeed, here Judge Kay

had not already issued a decision on these specific facts and legal questions. *See Doe v. Cigna

Life Ins. Co. of New York*, 304 F. Supp. 2d 477, 503-04 (W.D.N.Y. 2004) (holding that law-of-

the-case doctrine did not preclude magistrate from reconsidering arguments in motion for

summary judgment that were previously rejected in the context of a motion to amend).  And, in

any event, no Circuit has ever held that the doctrine should be extended to preempt the court's

ability to manage its docket in a flexible, fact-driven manner.[3]   Therefore, the court concludes

that the law of the case doctrine is not implicated here, but even if it were, the defendants'

representations to Judge Kay constitute sufficient cause for him to revise his prior orders.   *See*

*Laffey v. Northwest Airlines, Inc.*, 740 F.2d 1071, 1102-03 (D.C. Cir. 1984) (excusing adherence

to doctrine when evidence is "substantially different, controlling authority has since made a

contrary decision of the applicable law, or the decision was clearly erroneous and would work a

manifest injustice").

    The plaintiffs' complaint with the order denying as moot the plaintiffs' motion for

scheduling of dispositive motions is also baseless.   Judge Kay had the authority to manage the

case for all discovery and discovery-related purposes, broadly interpreted.   *See* Min. Order (Dec.

19, 2005) (referring case "for discovery disputes"); LCvR 72.2(a) (authorizing magistrate, at the

request of the district judge, to "hear and determine any pretrial motion or matter"); Fed. R. Civ.

P. 72(a) (same).   The areas in which a district court is prohibited to refer a matter to a magistrate

are clearly demarcated by the rules and statute; it is there that a court strictly scrutinizes a

magistrate's exercise of his power.   *See* 28 U.S.C. §§ 636(b)(1)(a) (enumerating non-discovery-

related motions that district judge may not refer to a magistrate) and (b)(3) (permitting allocation

of "additional duties as are not inconsistent with the Constitution and laws of the United States").

---

[3]        The First, Fifth, Eighth and Tenth Circuits apply the doctrine only to final judgments.  *See, e.g.*,
*Union Mutual Life Ins. Co. v. Chrysler Corp.*, 793 F.2d 1, 15 (1st Cir. 1986); *Lavespere v.
Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990); *Murr Plumbing, Inc. v.
Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995); *Unioil v. Elledge*, 962 F.2d
988, 993 (10th Cir.1992). On the other hand, the Second, Third, Seventh and Ninth Circuits
apply the doctrine to all trial rulings concerning dispositive legal questions.  *See, e.g.*, *DiLaura v.
Power Auth. of the State of New York*, 982 F.2d 73, 76-77 (2d Cir. 1992); *Bridge v. U.S. Parole
Comm'n*, 981 F.2d 97, 103 (3d Cir. 1992); *Wzorek v. City of Chicago*, 906 F.2d 1180, 1185 (7th
Cir. 1990); *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995).

By extending the discovery deadlines, the plaintiffs' motion was rendered moot: Judge Kay's

recognition of this ineluctable fact did not constitute a final order on the dispositive motions

schedule usurpative of this court's authority. *Vickers Motors, Inc. v. Wellford*, 502 F.2d 967, 969

(6th Cir. 1974) (holding that referral to magistrate judge, "even if erroneous," involved no abuse

of judicial power because 28 U.S.C. § 636(b)(2) authorizes magistrates to furnish assistance in

pretrial or discovery proceedings).   And, even if this court were more jealous of the scope of its

referrals, the error is harmless.   Had the motion been brought to this court's attention, it would

have entered an identical order declaring the motion moot, consonant with Judge Kay's decision

reopening discovery or pending the disposition of the appeal of that order.   Moreover, this appeal

disrupts any extant dispositive motions deadlines.   The court, therefore, holds that Judge Kay's

order finding as moot the plaintiffs' motion for scheduling dispositive motions is not contrary to

law.

**C.  Magistrate Judge Kay's Conclusion that Good Cause and Excusable Neglect Warranted
Reopening and Extending Discovery is not Clearly Erroneous**

**1.  The Conclusion that the Defendants Lost their Lead Counsel is not Clearly Erroneous**

The plaintiffs argue that the defendants did not actually lose their lead counsel but merely

voluntarily substituted him.  George Rickman, they insist, "may have handled most of the day-to-

day issues in this litigation, [but] he was just one member of [the defendants'] team."  Pls.' App.

Mot. at 11.  The plaintiffs identify Patricia Jones as the defendants' "lead attorney" because she

"signed defendants' Answer."  *Id.*  She entered her appearance on July 12, 2004, and "has

received electronic notification of every court filing."  *Id.*  They further note that she signed the

initial Rule 16.3 Report, "arguably signed (and was listed as counsel of record on) defendants'

April 21, 2006 Opposition to Plaintiffs' Third Motion for Sanctions," and engaged in

correspondence about scheduling and discovery in July 2005 and April 2006. *Id.* Additionally, they point out that another of the defendants' new attorneys, Phillip Lattimore, in fact signed five filings from September to October 2007. *Id.* at 11-12.

The defendants respond that Rickman was the lead and primary counsel "responsible for carrying out the yeoman's work of conducting discovery, researching case law, gathering documents[,] . . . [and] responding to and filing motions." Defs.' Opp'n at 3. They deny that his administrative leave was a calculated strategic move, alerting the court to Judge Kay's awareness from a November 29, 2007 conference call of his abrupt departure in two other cases only days before the start of trial in one. *Id.* at 4. Thus, the defendants maintain that "[c]ounsel was not substituted; counsel left the office . . . . There was no decision for 'voluntary substitution of counsel by defendants.'" *Id.* at 9. Moreover, Patricia Jones and Phillip Lattimore are Section Chiefs in the D.C. Office of Attorney General , not lead attorneys. *Id.* Section Chiefs review and sign the filings of attorneys under their supervision but cannot serve as substitutes for primaries. *Id.*

The court has difficulty imagining how the plaintiffs expected this court to treat their kitchen-sink assault on Judge Kay's fact finding. Did they anticipate the court would vindicate their argument that the mere signatures of OAG Section Chiefs confers upon them lead counsel status, designating them responsible for the day-to-day management of the multitude of cases that they supervise? The plaintiffs do not even attempt to explain why, if Jones and Lattimore were as involved as Rickman, the OAG found it necessary to enter the appearance of three new attorneys within three weeks of Rickman's departure. *See Summers v. Howard Univ.*, 374 F.3d 1188, 1196 (D.C. Cir. 2004) (upholding magistrate's finding when appellant "offer[red]

nothing to support the proposition that its . . . methodology was . . . preferable to that [relied upon by the magistrate]"). Indeed, the plaintiffs present the court with no substantial evidence compelling a reversal of Judge Kay's finding. *Cf. Sanderlin v. United States*, 794 F.2d 727, 734 (D.C. Cir. 1986) (reversing magistrate's finding as clearly erroneous because finding was based on an erroneous recollection of events by magistrate). Nor do they cite to any instance of another court overturning an evidentiary determination based on such meager arguments. *See Camenisch v. Singh*, 1998 WL 545434, at *1 (D.C. Cir. July 31, 1998) (upholding magistrate's finding, giving due regard to magistrate's judgment of credibility). If the court has little to say here, it is because the plaintiffs present it with a claim about which the less said the better.

## 2. The Conclusion Affirming Excusable Neglect and Good Cause is not Clearly Erroneous

The plaintiffs' penultimate challenge argues that the November 9, 2007 personnel disruption does not excuse the defendants' failure to meet their November 5, 2007 deadline for filing expert reports. Pls.' App. Mot. at 12. The defendants, the plaintiffs persist, did not demonstrate their diligence in pursuing discovery before the deadline or in seeking relief afterwards. *Id.* at 13. The defendants explain that they did pursue discovery but were obstructed by the plaintiffs' refusal to provide deposition dates of their experts until they received the defendants' expert reports. Defs.' Opp'n at 10.

The plaintiffs offer no reason for the court to second-guess Judge Kay's determination that the circumstances of Rickman's departure constituted excusable neglect, supporting a finding of good cause to reopen and extend discovery. Judge Kay held:

> While the Court is sympathetic to Plaintiffs' position in this matter, particularly in light of the history of delays in this case, the Court must consider the circumstances and timing of prior counsel's withdrawal of his appearance and the efforts being made by the Office to staff this case with three attorneys who are diligently working

to familiarize themselves with this litigation.

Mem. Order (Dec. 12, 2007) at 2-3.  A fair reading of the decision reveals that Judge Kay

concluded that the departure of the defendants' lead counsel was neither a nefarious (and risky)

strategic decision to trick him into reopening discovery nor a careless substitution of attorneys.

*Compare Marcin Engineering, LLC v. Founders at Grizzly Ranch, LLC*, 219 F.R.D. 516, 521 (D.

Colo. 2003) (denying motion to modify scheduling order on account of carelessness of party

substituting counsel) *with Coast Grading Co., Inc. v. United States*, 40 Fed. Cl. 309, 313 (Fed.

Cl. 1998) (concluding that excusable neglect and good cause existed because of inability of party

to secure substitution of counsel for reasons beyond her control) *and Keystone Mfg. Co., Inc. v.

Jaccard Corp.*, 2007 WL 4264609, at \*2-3 (W.D.N.Y. Nov. 30, 2007) (denying motion to re-

open discovery when new lead attorney had been on litigation team for 18 months and movant

voluntarily chose attorney as new representative).

The plaintiffs object that the defendants have not produced "admissible evidence (e.g., by

affidavit or documentary exhibit)" supporting their allegation that Rickman's sudden departure

left the defendants in the lurch.  Pls.' Reply at 4.  But no rule commands a judge to refer to

affidavits or exhibits when resolving nondispositive pre-trial matters.  It may be good policy to

do so, but that is left to the discretion of the presiding judge familiar with the parties and entitled

to make credibility determinations.  Accordingly, the court cannot conclude that Judge Kay's

conclusions on excusable neglect and good cause were clearly erroneous.

### 3.  The Conclusion Affirming no Undue Prejudice is not Clearly Erroneous

In their final argument, the plaintiffs contend that Judge Kay erred in finding that a

reopening of discovery would not unduly prejudice them.  Pls.' App. Mot. at 14.  Ninety days of

16

additional discovery is not "brief," they complain.  *Id.*  This case has been delayed for "more than

two years because of defendants' misconduct."  *Id.* at 15.  Additionally, plaintiff Beale is 63

years of age and "in declining health."  *Id.*  The defendants respond that the extended discovery

concerns only a few depositions, mostly of the plaintiffs' five designated experts.  Defs.' Opp'n

at 10.

The plaintiffs' claim that undue prejudice attaches to a 90-day extension for the

defendants to depose a handful of individuals rings shrill.  In finding no undue prejudice, Judge

Kay correctly highlighted the timing of the request, "which occurred shortly after the November

19, 2007 close of discovery and prior to any expert depositions being taken, dispositive motions

being filed or the setting of a trial date."  Mem. Order (Dec. 12, 2007) at 3; *cf.*, *Dag Enters., Inc.*

*v. Exxon Mobil Corp.*, 226 F.R.D. 95, 110 (D.D.C.  2005) (finding undue prejudice from new

cycle of expert discovery when defendant had already incurred significant expenses in litigating

through first round of discovery, including preparing substantive *Daubert* motions, and new

discovery would introduce new facts and theories).  Other than a wildly inapposite discrimination

case declaring three months beyond the maximum interval to establish causation between

protected activity and retaliation, *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 86 (2d Cir.

1990), the plaintiffs cite no case to the effect that 90 days is inherently long or burdensome.  And

their allegation of misconduct by the defendants falls flat, based as it is on outstanding contempt

motions that the court has not yet considered.  Finally, on the subject of the plaintiffs' invocation

of Ms. Beale's declining health, the fact that the plaintiffs filed this appeal belies their

overwrought exclamations of urgency.  Ninety days spent filing, briefing, and waiting for a

decision on an appeal takes just as long as ninety days complying with a limited discovery order

in the first instance.  Because the plaintiffs have presented no evidence warranting a reversal of Judge Kay's finding of no undue prejudice, the court will not categorize it as clearly erroneous.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the plaintiff's appeal to reverse Magistrate Judge Kay's December 12, 2007 orders.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 31st day of March, 2008.

RICARDO M. URBINA
United States District Judge
